MID-NORTHERN OIL CO., RESPONDENT, *v.* WALKER, STATE TREASURER, ET AL., APPELLANTS.

(No. 5,079.)

(Submitted November 27, 1922.   Decided December 18, 1922.)

[211 Pac. 353.]

*Taxation—Petroleum—Lessees of United States Government— Power of State to Tax Output—Exemption from Taxation —Burden of Proof—Federal Agencies—Statutory Construction.*

Taxation—License Tax—Petroleum—Statutes.
   1.   The tax of one per cent of the gross value of crude oil exacted from persons engaged in producing petroleum within the state, by Chapter 266, Laws of 1921 (secs. 2397–2408, Rev. Codes 1921), is not a property tax or imposed for regulatory purposes under the police power, but is a revenue measure and the exaction is a license or occupation tax.

Same—Exemption from Taxation—Burden of Proof.
   2.   Since under Article XII, section 1, the legislative assembly may impose a license tax upon persons and corporations doing business in the state, and taxation is the rule and exemption the exception, one

so doing business and attacking such a tax on the ground that he is exempt has the burden of showing that he comes within some definite exception to the rule.

Same—State may not Tax Agency of United States.

3. A state may not, without the consent of the Congress, impose a tax upon the operations of any means, agency or instrumentality of the United States through which the government performs its public functions.

Same—Oil Wells on Lands Leased from United States—Right of State to Tax Output.

4. *Held,* that an oil company operating under leases from the United States government and assigned to it, under the terms of which the lessees were given the exclusive right to explore for, extract and dispose of oil and gas in lands covered by homestead entries for which patents had not issued, is not such an agency or instrumentality of the federal government as to render the license or occupation tax imposed by Chapter 266, Laws of 1921, invalid.

Same—What not Agencies of United States Government Immune from Taxation.

5. Not every individual or corporation having a contract with the United States is by force of that fact alone an essential government agency immune to interference by taxation by the state in which the operations under the contract are carried out, the immunity extending only to those agencies of a strictly governmental character as distinguished from those doing business of a private character.

Same—Federal Oil Lands—Leases—Extraction of Oil Private Industry.

6. Petroleum is a mineral and an oil well is a mine; and mining or the extraction of oil is a private industry and not a governmental function, and in the control and disposition of its public mineral lands, the United States acts in its proprietary capacity and not by virtue of any attribute of sovereignty, and the mere fact that in leasing oil lands it reserves a part of the rent in kind does not change its relationship to the lessee.

Statutory Construction—Rule.

7. In the construction of statutes every word, phrase, clause or sentence employed in it is to be considered and none must be held meaningless if it is possible to give effect to it.

Taxation—Output of Oil from Leased Lands—State's Right to Tax.

8. *Held,* that construing section 32 of the federal Oil and Gas Leasing Act, providing that nothing in the Act shall affect the right of the "state to collect taxes upon improvements, output of mines (oil wells) or other rights," *etc.,* of any lessee, by the rule above (par. 7) the words "or other rights" must be held to include the privilege of producing oil, since in the absence of any declaration by Congress upon the subject, all of the privately owned property of the lessee is subject to taxation by the state.

Same—Authority of State to Impose License Tax on Oil Extracted by Domestic Corporation.

9. *Semble:* Since a domestic corporation accepts its charter upon the express condition that the legislature may at any time amend or repeal the Incorporation Act and thus destroy the corporation absolutely, it would seem that the major power to destroy includes the minor power to exact an excise as a condition to the corporation's right to continue business.

*Appeal from District Court, Lewis and Clark County; A. J. Horsky, Judge.*

SUIT by the Mid-Northern Oil Company against J. W. Walker, State Treasurer, and others, for an injunction. Judgment for plaintiff and defendants appeal. Reversed.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Rankin* argued the cause orally.

Plaintiff is not an agent or instrumentality of the federal government. The plaintiff relied in the court below upon the cases of *Choctaw, O. & G. R. Co.* v. *Harrison,* 235 U. S. 292, 59 L. Ed. 234, 35 Sup. Ct. Rep. 27, and *Indian Ter. Ill. Oil Co.* v. *Oklahoma,* 240 U. S. 522, 60 L. Ed. 779, 36 Sup. Ct. Rep. 453. Those cases, however, are based upon facts wholly dissimilar to the facts in this case. There the lands in question belonged to Indian tribes and by reason of an Act of Congress the United States government had agreed that the mines should be operated under the supervision and control of two trustees appointed by the President and subject to rules prescribed by the Secretary of the Interior. The government was obligated to operate the mines. In the performance of this obligation the agency chosen for that purpose was performing functions or duties devolving upon the government, and of course as such was exempt from the imposition of state taxes. In the instant case there is no duty or obligation on the part of the government to operate oil leases. Those operating leases are not discharging any function of the federal government. They are operating solely for their own profit and gain. Of course, there is a clear distinction between a lessee of Indian lands and a lessee of land such as the respondent in this case. In the one case the government is performing a duty which it has assumed toward the Indians, and in the other there is no such duty or obligation.

In the case of *Choctaw, O. & G. R. Co.* v. *Mackey*, 256 U. S. 531, 65 L. Ed. 1076, 11 Sup. Ct. Rep. 582, the court in effect modified its opinion in the above cases even as to property belonging to the Indians. The language of this court in the case of *Cosier* v. *McMillan*, 22 Mont. 484, 56 Pac. 965, is here pertinent. It was held in the case of *St. Louis-San Francisco Ry. Co.* v. *Middlekamp*, 256 U. S. 226, 65 L. Ed. 905, 41 Sup. Ct. Rep. 489, that a railroad company while under federal control was not exonerated from a state franchise tax, it not being an agent of the federal government.

A corporation not performing any of the constitutional functions or powers of the federal government, but engaged solely in business for its own private gain and advantage such as the plaintiff in this action, cannot be considered as an agent or instrumentality of the federal government so as to be exempt from taxation by the state. (*Baltimore Shipbuilding etc. Co.* v. *Mayor and City Council of Baltimore*, 195 U. S. 375, 49 L. Ed. 242 [see, also, Rose's U. S. Notes]; *Thomson* v. *U. P. R. R. Co.*, 9 Wall. 579, 19 L. Ed. 792; *Fidelity & Deposit Co. of Maryland* v. *Commonwealth of Pennsylvania*, 240 U. S. 319, 60 L. Ed. 664, 36 Sup. Ct. Rep. 298.)

Even if it be considered that the plaintiff corporation is an agent or instrumentality of the federal government, still this alone does not deprive the state of the authority to impose a tax upon the privilege of doing business. The sole test is, will the imposition of the tax interfere with or impair the efficiency of such agent in performing the function by which it serves the government? This rule was declared in the case of *Western Union Tel. Co.* v. *Attorney General of the Commonwealth of Massachusetts*, 125 U. S. 530, 31 L. Ed. 790, 8 Sup. Ct. Rep. 961. (See, also, *Northern Pac. R. Co.* v. *Patterson*, 154 U. S. 130, 38 L. Ed. 934, 14 Sup. Ct. Rep. 977; *Union Pac. R. R. Co.* v. *Peniston*, 18 Wall. 5, 21 L. Ed. 787.)

*Mr. Donald Campbell,* for Respondent, submitted a brief and argued the cause orally.

An examination of the authorities will disclose the fact that a state has power to tax the physical and tangible property of a corporation when such property is located within its borders, whether such corporation be or be not engaged in interstate commerce and whether such corporation is or is not a governmental agency or instrumentality, but no state has the power to impose a tax or license upon the right and privilege of a corporation to carry on its business within a state when that business consists of engaging in interstate commerce or is of such a character as to make the corporation a governmental agency or instrumentality, for the imposition of such a tax or license creates, or is presumed to create, an obstruction and interference with interstate commerce or the operations and functioning of governmental agencies. Narrowing the discussion down to the precise question before us we find the rule to be, without exception, that no license, occupation or privilege tax can lawfully be imposed by a state upon a governmental agency or instrumentality. (*McCulloch* v. *Maryland,* 4 Wheat. 316, 4 L. Ed. 579 [see, also, Rose's U. S. Notes]; *Leloup* v. *Port of Mobile,* 127 U. S. 640, 32 L. Ed. 311, 8 Sup. Ct. Rep. 1380; *Union Pac. R. R. Co.* v. *Peniston,* 18 Wall. 5, 21 L. Ed. 787; *Choctaw, O. & G. R. Co.* v. *Harrison, supra; Indian Ter. Ill. Oil Co.* v. *Oklahoma,* 240 U. S. 522, 60 L. Ed. 779, 36 Sup. Ct. Rep. 453; *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, 62 L. Ed. 624, 38 Sup. Ct. Rep. 292; *Re Wolverine Oil Co.* (Okl.), L. R. A. 1916F, 141, 154 Pac. 362; *Large Oil Co.* v. *Howard,* 63 Okl. 143, 163 Pac. 537; *Large Oil Co.* v. *Howard,* 248 U. S. 549, 63 L. Ed. 416, 39 Sup. Ct. Rep. 183; *Gillespie* v. *Oklahoma,* 257 U. S. 501, 66 L. Ed. 211, 42 Sup. Ct. Rep. 171; *In re Skelton L. & Z. Co.'s Gross Production Tax for 1919,* 8 Okl. 134, 197 Pac.

495; *Protest of Bendelari Gross Production Tax for .1919*, 82 Okl. 97, 198 Pac. 606.)

The question here involved has never been directly before our supreme court, but this court has at all times recognized the rule, and has inferentially held with the rule, that governmental agencies, as such, are not subject to the imposition of a license or occupation tax. (*State* v. *Thos. Cruse Sav. Bank*, 21 Mont. 50, 52 Pac. 733; *State* v. *Rocky Mountain Bell Tel. Co.*, 27 Mont. 394, 71 Pac. 311; *J. I. Case T. M. Co.* v. *Stewart*, 60 Mont. 380, 199 Pac. 909.)

Appellants attempt to draw a distinction between the facts as they existed in those cases and the facts as they exist in the case at bar. The Oklahoma cases dealt with the lessees of Indian lands, and it is urged that the government, in the granting of such leases, was acting in a fiduciary capacity under the peculiar relations which existed between the government and the Indian tribes; namely, that the government acted as a trustee for the Indians in the handling and disposal of their tribal lands, and that, in granting the leases, the government selected the lessees as its agents and representatives for the purpose of performing and carrying out its duties to the Indians. The supreme court of the United States has declared such lessees to be governmental agencies, and we are at a loss to understand on what theory of reasoning the lessees selected by the government to deal with it in its fiduciary capacity and to perform its duties to an Indian tribe have any other or different status than those selected by the government to deal with it directly for the purpose of carrying out and performing its policies and desires with respect to its own property. It would seem to us to make no difference, so far as the existence or creation of an agency or instrumentality is concerned, whether the title to the property was temporarily reposed in the government under a trust relation or whether such title rested in it absolutely, except that the presumption of the creation of such agency would be stronger in the latter case.

The appellants lay much stress upon the proposition that even conceding the respondent to be a governmental agency, the license tax in question will not impair its efficiency as such agency. . It is wholly immaterial whether the imposition of the license would or would not impair the efficiency of the respondent in the performance of its duties toward the government. But, laying aside that contention for the moment, it is a fundamental principle that the power to tax gives the power to destroy, and this court cannot sit as an arbiter to say when a license tax will or will not be a burden upon the person or corporation against whom it is imposed, or when it will or will not be destructive. If the legislature can impose upon this respondent a license tax equivalent to the value of one per cent of its gross production, it can, with equal propriety, impose a tax of fifty per cent of the value of such production. It is with the legality and constitutionality of the law that this court is concerned, and not the practical effect thereof, but the rule is that an occupation or license tax directed against a governmental agency is presumed to impair its efficiency. (*Union Pac. R. R. Co.* v. *Peniston, supra.*)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

By Chapter 266, Laws of 1921 (secs. 2397–2408, Rev. Codes 1921), every person engaged in producing petroleum or other mineral or crude oil within this state is required to pay to the state annually a license tax equal to one per centum of the gross value of the oil so produced during the year. The Mid-Northern Oil Company is a domestic corporation actively engaged in the production of crude petroleum within this state, but claims exemption from the operation of the statute above. It refuses to pay the tax, and, to avoid a multiplicity of suits, and as well the penalty provided by the Act for a refusal to pay, instituted this suit to secure an injunction restraining the members of the state board of equali-

zation from enforcing the statute against it.  The trial court rendered and had entered a judgment granting to plaintiff the relief sought, and the defendants appealed.

The essential facts involved here are these: Pursuant to the terms of the federal Oil and Gas Leasing Law (Act Feb. 25, 1920, 41 Stat. 437), the government of the United States executed and delivered to certain individuals leases under the terms of which the respective lessees were given the exclusive right to explore for, extract, and dispose of oil and gas in lands covered by homestead entries for which patents had not issued.  The plaintiff is the owner, in whole or in part, of these leases by assignments which have been duly approved by the Land Department, and in the production of oil its operations are confined exclusively to the lands mentioned in the leases.

There cannot be any controversy over the character of the [1] tax involved.  The statute declares that it is imposed "for engaging in and carrying on such business" and that the tax, when collected, shall become a part of the general fund of the state.  The tax is not in any sense a property tax, and neither is it exacted for regulatory purposes under the police power.  The statute is a revenue measure, and the exaction is a license or occupation tax.  (*State* v., *Camp Sing*, 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516; *Northwestern Mutual Life Ins. Co.* v. *Lewis and Clark County*, 28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982; *State* v. *Hammond Packing Co.*, 45 Mont. 343, 123 Pac. 407; *Id.*, 233 U. S. 331, 58 L. Ed. 985, 34 Sup. Ct. Rep. 596; *Equitable Life Assur. Co.* v. *Hart*, 55 Mont. 76, 183 Pac. 1062.)

We enter upon our investigation of this subject confronted [2] by the declaration of our state Constitution that the legislative assembly may impose a license tax upon persons and corporations doing business in the state (sec. 1, Art. XII), and by the principle well-nigh universally recognized "that taxation is the rule and exemption the exception." (*Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878.)  Since plain-

tiff is doing business in this state, the burden is upon it to show that it comes within some definite exception to the general rule. The right to impose an occupation tax upon it is denied by the plaintiff upon the theory that in carrying out its leases it acts as an agent for or instrumentality of the United States in the disposition of the public lands. In *McCulloch* v. *Maryland,* 4 Wheat. 316, 4 L. Ed. 579, decided in 1819, the supreme court of the United States held that a state may not exact a tax upon the operations of a branch of the United States bank no matter how reasonable or universal or undiscriminating the tax may be. The decision had its foundation in the entire absence of power on the part of the state to interfere with or control a governmental instrumentality of the United States. That doctrine has been reiterated in numerous cases down to and including *Johnson* v. *Maryland,* 254 U. S. 51, 65 L. Ed. 126, 41 Sup. Ct. Rep. 16, decided in 1920. In this last case it was held that a postal employee in the discharge of his duties delivering mail by means of a government owned motor-truck cannot be required to procure a motor vehicle license from the state after demonstrating his competency to operate the machine and the payment of a prescribed fee. (See, also, *Farmers' Bank* v. *Minnesota,* 232 U. S. 516, 58 L. Ed. 706, 34 Sup. Ct. Rep. 354.) Whatever difference of opinion may have been entertained upon the question heretofore, we think it may be accepted as settled now that a state may not, **[3]** without the consent of the Congress, impose a tax upon the operations of any means, agency or instrumentality of the United States through which the government performs its public functions, and that the character of the tax or the extent of the burden it imposes is altogether immaterial. The distinction between a tax upon the operations of an agency of government and a property tax is to be kept in mind. That the state may impose a general *ad valorem* tax upon the private property of an agency of the government has been declared so often that it has become axiomatic.

With these principles before us, our attention is concentrated upon the decisive question presented by this appeal: [4] Is the Mid-Northern Oil Company, in the execution of its leases, such an agency or instrumentality of the United States as that this state may not exact of it an occupation tax? Plaintiff insists that the question has been set at rest by the recent decisions of the supreme court of the United States in the Oklahoma cases, and a brief review of those cases will serve to illustrate the contention.

In *Choctaw, O. & G. R. Co.* v. *Harrison,* 235 U. S. 292, 59 L. Ed. 234, 35 Sup. Ct. Rep. 27, there was drawn in question the right of the state of Oklahoma to collect from the railroad company an occupation tax computed upon the gross sales of coal mined by the railroad company from unallotted lands belonging to the Choctaw and Chickasaw Indian tribes, under leases authorized by Congress. The court held that the agreement between the United States and the Indians imposed upon the former a definite duty in respect to opening and operating the coal mines upon the Indian lands, and held further that the railroad company ''is the instrumentality through which this obligation is being carried into effect,'' and that ''such an agency cannot be subjected to an occupation or privilege tax by a state.''

In *Indian Ter. Ill. Oil Co.* v. *Oklahoma,* 240 U. S. 522, 60 L. Ed. 779, 36 Sup. Ct. Rep. 453, the facts appeared to be that the oil company, by approved assignment from the original lessee, became the owner of a lease from the Osage Indians to prospect for and produce petroleum and natural gas in lands belonging to the Indians in the Osage Reservation. The state of Oklahoma undertook to subject that lease, and subleases held by the oil company, to general taxation for state, county, and other purposes, either as a species of property or as the measure of the value of property subject to taxation. The court held that the state could not tax property under the protection of the federal government and that the leases in question ''have the immunity of such protec-

tion.'' Concluding its opinion the court said: ''It follows from these views that the assessment against the oil company, so far as it included the leases, whether as separate objects of taxation or as represented or valued by the stock of the company, is invalid.'' The same principle was applied to gross production taxes in *Howard* v. *Gypsy Oil Co.,* 247 U. S. 503,· 62 L. Ed. 1239, 38 Sup. Ct. Rep. 426, and in *Large Oil Co.* v. *Howard,* 248 U. S. 549, 63 L. Ed. 416, 39 Sup. Ct. Rep. 183.

Finally, in *Gillespie* v. *Oklahoma,* 257 U. S. 501, 67 L. Ed. 501, 42 Sup. Ct. Rep. 171, decided January 30, 1922, there was presented the contention by the state of Oklahoma that it might exact a tax from a lessee of Indian lands based upon the net income derived from his operations · under leases similar to those involved in *Choctaw, O. & G. R. Co.* v. *Harrison* and in *Indian Ter. Ill. Oil Co.* v. *Oklahoma,* above, but its claim was denied. The court said: ''The same considerations that invalidate a tax upon the leases invalidate a tax upon the profits of the leases, and, stopping short of theoretical possibilities, a tax upon such profits is a direct hamper upon the effort of the United States to make the best terms that it can for its wards.''

As we understand these decisions, the exemption in each instance was based solely upon the peculiar character of the lease involved, and not upon the fact that the individual or corporation benefited was a lessee of the government. In other words, the court did not hold that every individual or corporation having a lease upon public land is *ipso facto* an agent or instrumentality through which the government executes its power to dispose of the public lands, but it did hold that the fiduciary relationship existing between the United States and the particular Indian wards imposed upon the government a positive duty to lease the Indian lands and to secure for the Indians the most advantageous terms available; that in the discharge of its duty the government approved the leases in question and chose the lessee in each

instance as its agent or instrumentality through which it
carried its leases into execution, and thereby discharged its
public duty.

It cannot be contended that every individual or corporation
[5] having a contract with the United States is by force of
that fact alone an essential governmental agency immune to
interference by the state in which the operations under the
contract are carried out. In *Baltimore Shipbuilding & Dry
Dock Co.* v. *Baltimore,* 195 U. S. 375, 49 L. Ed. 242, 25 Sup.
Ct. Rep. 50, the facts were these: The United States con-
veyed to the Dry Dock Company lands formerly within the
Fort McHenry Reservation. By the terms of the grant the
purchaser was required, among other things, to construct a
dry dock and to permit the government to use it free of
charge. The grant provided, also, that if the purchaser failed
to carry out the terms of the grant the land should revert
to the government. The Dry Dock Company claimed exemp-
tion from local taxation, first because the tax was imposed
upon land in which the United States had an interest, and,
second, because the land was an instrumentality through
which the government executed its powers. With respect to
the first contention the court held that it was only the in-
terest of the Dry Dock Company that was subjected to taxa-
tion, and the second contention was denied altogether. Con-
cerning it the court said: "It seems to us extravagant to say
that an independent private corporation for gain, created by a
state, is exempt from state taxation, either in its corporate
person or its property, because it is employed by the United
States, even if the work for which it is employed is important
and takes much of its time."

In *Fidelity & Deposit Co.* v. *Pennsylvania,* 240 U. S. 319,
60 L. Ed. 664, 36 Sup. Ct. Rep. 298, the facts involved were
that the deposit company, a Maryland corporation licensed
to transact business in Pennsylvania, was also authorized by
federal statute to become surety upon bonds, undertakings
and recognizances required of federal officers in Pennsylvania

or in litigation pending in that state. It executed such bonds for which the government paid it something over $17,000 in premiums during the year 1909. The state of Pennsylvania undertook to exact an occupation tax equal to two per centum upon the gross premiums received from business done within the state, and payment of the tax was resisted so far, at least, as it related to premiums received from the United States upon the theory that with respect to the bonds furnished the United States the deposit company was an instrumentality of the general government and exempt from taxation for doing the business which the Congress had authorized it to do. The claimed immunity was denied, and, concerning the relationship of the company to the United States, the court said: ''But mere contracts between private corporations and the United States do not necessarily render the former essential governmental agencies and confer freedom from state control.'' (See, also, *Choctaw, O. & G. R. Co.* v. *Mackey,* 256 U. S. 531, 65 L. Ed. 1076, 41 Sup. Ct. Rep. 582.)

In these cases we think the supreme court of the United States has recognized a distinction between an agency or instrumentality through which governmental powers are executed and an agency employed or made use of by the government as a mere incident to the discharge of some of its functions, and support for this view is found in *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, Ann. Cas. 1912B, 1312, 55 L. Ed. 389, 31 Sup. Ct. Rep. 342. It was there said: ''It has been held in a number of cases that the state cannot tax franchises created by the United States or the agencies or corporations which are created for the purpose of carrying out governmental functions of the United States [citing cases]. An examination of these cases will show that in each case where the tax was held invalid the decision rested upon the proposition that the corporation was created to carry into effect powers conferred upon the federal government *in its sovereign capacity,* and the attempted taxation was an interference with the effectual exercise of such powers.''

The restriction upon the power of a state to tax an agency of the federal government is not greater and not less than the restriction upon the power of the United States to tax an agency of the state. (*Veazie Bank* v. *Fenno,* 8 Wall. 533, 19 L. Ed. 482; *Collector* v. *Day,* 11 Wall. 113, 20 L. Ed. 122; *United States* v. *Baltimore & Ohio R. Co.,* 17 Wall. 322, 21 L. Ed. 597; *Ambrosini* v. *United States,* 187 U. S. 1, 47 L. Ed. 49, 23 Sup. Ct. Rep. 1.) In *South Carolina* v. *United States,* 199 U. S. 437, 4 Ann. Cas. 737, 50 L. Ed. 261, 26 Sup. Ct. Rep. 110, the court reviewed the previous decisions holding state agencies immune to federal taxation and from them deduced the rule that the immunity extends only to those agencies of a strictly governmental character as distinguished from those doing business of a private character.

It must be conceded that the interests of the United States [6] in the lands covered by plaintiff's leases are mineral in character; that oil is a mineral, and that an oil well is a mine. (*Burke* v. *Southern Pac. R. Co.,* 234 U. S. 669, 58 L. Ed. 1527, 34 Sup. Ct. Rep. 907.) But mining is not a public utility. It is a private industry, and the exploitation and development of mines are no more governmental functions than the cultivation of the soil or the manufacture of farm machinery. In the control and disposition of its public mineral lands, the United States acts in its proprietary capacity, and not in virtue of any attribute of sovereignty. As paramount proprietor, it has the same right of control and disposition as is incident to absolute ownership in an individual (1 Lindley on Mines, 3d ed., sec. 80), and the fact that in this instance the government reserves a part of its rent in kind does not affect its relationship to the lessee (*United States* v. *Gratiot,* 14 Pet. 526, 10 L. Ed. 573). In our judgment, plaintiff's character is that of a private contractor dealing with the United States upon no different footing than a contractor who undertakes the work of constructing necessary improvements upon a reclamation project or a

herdsman who grazes his flock upon a forest reservation under government permit.

Again, it appears to us that it was never the intention of [7, 8] the Congress that a lessee under the federal oil and gas leasing law should be permitted to enjoy the immunity claimed by this plaintiff. Section 32 of the Act above provides ''that nothing in this Act shall be construed or held to affect the rights of the states or other legal authority to exercise any rights which they may have, including the right to levy and collect taxes upon improvements, output of mines, *or other rights,* property, or assets of any lessee of the United States.'' It is the general rule for the construction of statutes that every word, phrase, clause or sentence employed is to be considered and none shall be held to be meaningless if it is possible to give effect to it. (*Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454.) In the absence of any congressional declaration upon the subject, all of the privately owned property of this plaintiff within the jurisdiction of the state, including the improvements upon the claims, the net proceeds of the mines, and other property or assets, whether used in connection with the mining operations or not, is subject to taxation by this state, and, excluding the terms just enumerated, we undertake to say that there is not anything else which is or could be the subject of taxation except the privilege of producing oil, and, if that privilege be held to be exempt, then the phrase ''or other rights'' employed in the statute is meaningless. But we are not at liberty to assume that the Congress employed the expression merely for good measure or to conceal an idea; on the contrary, it is our judgment that the phrase was used advisedly with the other terms employed to indicate that a lease authorized by the statute shall not confer upon the lessee of the government the right to claim any special exemption from taxation which is not accorded to a lessee of a private owner. In *Fidelity & Deposit Co.* v. *Pennsylvania,* above, after employing the language which we have quoted, the court said: ''If the per-

tinent statute discloses the intention of Congress that such corporations contracting under it with the federal government shall not be exempt from state regulation and taxation, they must submit thereto." And, after referring to the Act of Congress under which the company exercised its right to furnish surety bonds, the court concluded: "Neither circumstances nor language of the Act indicate design or necessity to limit application by the several states of a well-established system of licensing and taxing bonding companies not incorporated under their own statutes."

When our Constitution declares that the legislative assembly may impose a license tax upon persons and corporations doing business in this state, it means, of course, that the authority may be exercised upon persons or corporations to which the taxing power of the state extends. It was said in *McCulloch* v. *Maryland,* above, that the sovereignty of a state extends to everything which exists by its own authority or is introduced by its permission, and that "all subjects over which the sovereign power of a state extends are objects of taxation."

Plaintiff is a domestic corporation owing its very existence [9] and right to transact business to the grace of this state expressed through our general incorporation laws, and, though its charter is a contract, it was sought and accepted upon the express condition declared by our state Constitution that the laws authorizing it "shall be subject to future repeal or alteration by the legislative assembly." (Sec. 2, Art. XV.) If, instead of enacting the occupation tax statute, our legislature had repealed the statute under which plaintiff exists, its powers to explore for or produce petroleum in this state would have been destroyed absolutely, and plaintiff could not have been heard to complain. Section 6013, Revised Codes of 1921, in force in this state since July 1, 1895, provides: "The legislative assembly may at any time amend or repeal this part, or any chapter, or section thereof, and dissolve all corporations created thereunder." That the power

to destroy plaintiff as a corporate entity was reserved and may be exercised by this state is beyond controversy. (*Allen* v. *Ajax Mining Co.,* 30 Mont. 490, 77 Pac. 47; *Somerville* v. *St. Louis M. & M. Co.,* 46 Mont. 268, L. R. A. 1915B, 811, 127 Pac. 464.) It would seem to be but a mere truism to say that the major power to destroy plaintiff's capacity to conduct business must, of necessity, include the minor power to exact an excise as a condition to its right to continue business.

It is our conclusion that plaintiff is not such an agency or instrumentality of the general government as that it may claim immunity from state regulation or control; that it is not exempt from payment of the occupation tax prescribed by Chapter 266, above, and that the complaint does not state facts sufficient to entitle it to relief.

The judgment is reversed and the cause is remanded to the district court, with directions to sustain the defendants' demurrer.

*Reversed.*

ASSOCIATE JUSTICES FARR and GALEN and HONORABLE JEREMIAH J. LYNCH, District Judge, sitting in place of the Chief Justice, disqualified, concur.

MR. JUSTICE COOPER, being absent, did not hear the argument, and takes no part in the foregoing decision.

Rehearing denied January 10, 1923.