JUSTICE WARNER
dissenting.
¶40 I agree with Justice Rice’s dissent. I write separately to illustrate what I believe is error in the Court’s interpretation of § 70-30-102, MCA.
¶41 The first oil well drilled in the United States was drilled in Pennsylvania in 1859. As a fuel, oil was originally used as kerosene and later in furnaces. With the invention of the internal combustion engine in the later 1800's, it became clear that oil would be a highly sought-after commodity.
¶42 In 1914, the U.S. Supreme Court was called upon to decide whether a federal land grant to a railroad company included mineral lands. The issue arose when plaintiff and his associates discovered petroleum and attempted to locate placer mining claims upon the lands patented to the railroad. Burke v. Southern Pacific Railroad Company (1914), 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527. The Burke Court determined that all the issues in the case turned upon the question, “[i]s petroleum or mineral oil within the meaning of the term ‘mineral’ as it was used in said acts of Congress reserving mineral land from the railroad land grants?” Burke, 243 U.S. at 676, 34 S.Ct. at 910. The Burke Court reviewed both scientific and historical evidence. It culled the decisions of several state courts, various other acts of Congress utilizing the terms “mineral” and “mineral lands,” and decisions of the Land Department, all of which had determined that in *396 common usage and understanding, petroleum is a mineral. Ultimately, the Court determined that mineral lands are all lands "chiefly valuable for their deposits of a mineral character, which are useful in the arts or valuable for purposes of manufacture,” Burke, 243 U.S. at 676, 34 S.Ct. at 910, (quoting Northern Pacific Railway Co. v. Soderberg (1903), 188 U.S. 526, 23 S.Ct. 365, 47 L.Ed. 575), and that petroleum is a mineral. Burke, 243 U.S. at 679, 34 S.Ct. at 911. The Court further noted approvingly the Supreme Court of Pennsylvania’s statement that “the work of extracting [oil] from the containing rocks [is] ‘mining for oil.’ ” Burke, 243 U.S. at 676, 34 S.Ct. at 910, (quoting Funk v. Haldeman (Pa. 1867), 53 Pa. 229).
¶43 Cases citing Burke include issues of royalty law, conveyancing law, real property law, taxation, etc. And while “[t]he term ‘mineral’ has been the source of considerable confusion in mineral law litigation nationwide,”Farley v. Booth Brothers Land & Livestock Co. (1995), 270 Mont. 1, 5, 890 P.2d 377, 379, Burke’s conclusion that oil is popularly understood to be a mineral, set precedent for the entire nation. See U.S. v. Standard Oil Co. (S.D. Cal. 1937), 20 F.Supp. 427; Lovelace v. Southwestern Petroleum Co. (E.D. Ky. 1919), 267 F. 504; Amoco Production Co. v. Guild Trust (D.Wyo. 1978), 461 F.Supp. 279; U.S. v. Southern Pacific Co. (1919), 251 U.S. 1, 40 S.Ct. 47; Union Oil Co. of California v. Smith (1919), 249 U.S. 337, 39 S.Ct. 308; Rowe v. Chesapeake Mineral Co. (6th Cir. 1946), 156 F.2d 752; General Petroleum Corp. of California v. U.S. (S.D.Cal. 1938), 24 F. Supp. 285; Brennan v. Udall (D.Colo. 1966), 251 F.Supp. 12; Long v. Madison Coal Corp. (W.D.Ky. 1954), 125 F.Supp. 937; Estate of Fairbank v. U.S. (Ct.Cl.1964), 164 Ct.Cl. 1 ;Lee v. Straughan (Ark. 1920), 226 S.W. 171; Cornwell v. Buck & Stoddard, Inc. (Cal.App. 1938), 82 P.2d 516; Mid-Northern Oil Co. v. Walker (Mont. 1922), 65 Mont. 414, 211 P. 353.
¶44 By 1920, the oil and gas industry was well-established nationwide.[1] The federal Mineral Leasing Act of 1920, 30 U.S.C. § 181, et seq., was passed to “promote the mining of coal, phosphate, oil, oil shale, gas, and sodium on the public domain,” 41 Stat. 437 (1920), and to “promote the orderly development of the oil and gas deposits in the publicly owned land of the United States through private enterprise.” Harvey v. Udall (10th Cir. 1967), 384 F.2d 883, 885. In passing the Mining and Minerals Policy Act of 1970, 30 U.S.C. 21(a), Congress clearly stated that it was in the country’s best interest to “foster and *397 encourage private enterprise in (1) the development of economically sound and stable domestic mining, minerals, metal and mineral reclamation industries, [and] (2) the orderly and economic developmentof domestic mineral resources30 U.S.C. 21(a). Section 21(a) goes on to define “minerals” as “all minerals and mineral fuels including oil, gas, coal, oil shale and uranium.”
¶45 Montana, meanwhile, did not experience its first commercial quantity discovery of oil until 1913.[2] In 1921, the Montana Legislature enacted a license tax scheme which included separate chapters covering coal mines, metalliferous mines, gasoline distributors, and oil producers. See Chapters 182, 183, 185, 186, RCM (1921). The next year, the Montana Supreme Court was called upon to interpret the new laws. In Mid-Northern, the oil company balked at the prospect of paying the license tax to the state of Montana under a statute that read as follows:
Every person engaging in or carrying on the business of producing, within this state, petroleum, or other mineral or crude oil, or engaging in or carrying on the business of owning, controlling, managing, leasing or operating, within this state, any well or wells from which any merchantable or marketable petroleum or other mineral or crude oil is extracted or produced ... must... pay to the state treasurer ... license tax for engaging in and carrying on such business ....
Section 2398, RCM (1921). The case also implicated the recently enacted federal Mineral Leasing Act of 1920. The company argued that because it was a lessee of the federal government under the federal Mineral Leasing Act of 1920, it was an agent of the federal government and could not be taxed by a state. This Court held that the oil company was merely a private contractor dealing with the United States in its proprietary character; that it was not elevated to status of agent by virtue of its lease. Mid-Northern, 65 Mont. at 427, 211 P. at 356. In so holding, this Court cited Burke and stated:
It must be conceded that the interests of the United States in the lands covered by plaintiffs leases are mineral in character; that oil is a mineral, and that an oil well is a mine .... But mining is not a public utility. It is a private industry, and the exploitation and development of mines are no more governmental functions than the cultivation of the soil or the manufacture of farm machinery.
*398 Mid-Northern, 65 Mont. at 427, 211 P. at 356. The Court then went on to conclude that the oil company was required to pay the license tax. ¶46 Contrary to the Court’s present interpretation, it is clear that the 1921 state licensing statute was not, by its terms, attempting to limit or define the terms "oil” and "well.” It is also clear that the Court in Mid-Northern was not attempting to interpret the terms “oil” and “well” as used in the statute. Rather, the Court was clearly comfortable utilizing the terms “mine” and “well” interchangeably, and was clearly not perplexed by the common understanding that “oil” is a “mineral.” Since its publication in 1922, Mid-Northern has been cited for this premise by numerous courts, treatises, and law reviews,[3] and until today, no one has questioned the general status of oil as a mineral under Montana law.
¶47 Today, however, things change. At ¶ 25, the Court states that “[a] general knowledge of Montana history supports the notion that the intent of that mining-related subsection enacted in 1877 was to encompass ‘hard rock’ or ‘ore’ mining, and McCabe presents no argument or evidence suggesting otherwise.” The Court is correct that in 1877, the Legislature was focused on hard rock mining. To place this statement in context, however, it must be remembered that Montana did not experience its first major oil discovery until 1913, thirty-six years later. It is not unreasonable that the Legislature did not prospectively provide for an industry that did not exist at the time, and it is reasonable to conclude that the Legislature was paying attention to the nationwide trend in the law, including Montana law, to generally classify oil as a mineral. Paragraph 25 also states that “[§ 70-30-102(33)] ... has been carried forward to the present in essentially the same form.” Clearly, however, after the Mid-Northern decision, the Legislature had no reason to amend what is now § 70-30-102(33), MCA, to include in the eminent domain laws specific provisions for land needed for roads to access oil wells, because this Court had stated unequivocally that an oil well is a mine. Based on Mid-Northern, the Legislature almost certainly concluded that adding a special provision for oil wells would be redundant.
¶48 At ¶¶ 19-20, the Court acknowledges this Court’s prior *399 declarations in Mid-Northern and Rice that “oil is a mineral, and... an oil well is a mine.” It then tells McCabe that it is wrong to rely on that definition, because an oil well is only a mine when taxes are at issue. The Court by this decision changes eighty-two years of settled law in Montana. In Rice, the plaintiff was drilling for oil on two adjoining tracts of land under two separate operating agreements. The plaintiff operated the tracts as one unit to maximize efficiency, and when it came time to pay taxes, attempted to treat both tracts as one “mine.” This attempt rested on the long-standing habit of metalliferous miners of consolidating adjoining claims for convenience. In such circumstances, if there were continuity of interest in the claims, and if the work performed on the claims tended to benefit all of the claims in the group, then the claims could be assessed as one “mine.” Rice, 86 Mont. at 432, 284 P. at 146. The Court did not allow the separate claims in Rice to be consolidated into one “mine” for tax purposes because the lessors of the two tracts did not have continuity of interest, and in fact expected the lessee to keep the output of the two tracts separate for royalty purposes. However, there was no indication whatsoever from the Court, that there was any question that an oil well was not a mine. Rice drew upon Burke, which was not a taxation case, and Mid-Northern, as authority for the postulate that oil is a mineral and a well is a mine. Apparently, the Rice court was looking for some guidance on the issue, and determined that the U.S. Supreme Court and the Supreme Court of Montana were reasonable guides. The Court in this case, however, discounts Mid-Northern and Rice because they are tax cases, and also discounts Burke, concluding that it is not valuable precedent because it construed federal law not Montana law. The Court’s interpretation of these cases is, to say the least, strained, and in my view, incorrect.
¶49 Additionally, Mid-Northern, decided in 1922, and Rice, decided in 1930, are not the only Montana authorities to follow the oil-as-mineral standard. In Forbes v. Mid-Northern Oil Co. (1935), 100 Mont. 10, 45 P.2d 673, the Court was construing Chapters 139 and 140 of the Laws of 1927. Chapter 139 dealt with the statement of gross yields of mines and net proceeds, and how they are computed. In its discussion, the Court made no distinction between an oil well and a mine, stating, “[tjhis Act requires the operator of a mine (or oil-well) to make out and deliver to the State Board of Equalization a statement of the gross yield of the minerals from such mine ... .” Forbes, 100 Mont. at 13, 45 P.2d at 675. See also Byrne v. Fulton Oil Co. (1929), 85 Mont. 329, 278 P. 514 (construing Ch.140 of the Laws of 1927 which read “Every *400 person ... mining from ... any mine whatsoever containing gold ... petroleum or other valuable minerals ...”). In Rist v. Toole County (1945), 117 Mont. 426, 159 P.2d 340, the question was whether a grantee of a landowner’s royalty in oil lands could lose his rights by tax sale against the grantor. Throughout the opinion the Court cited statutes, including Article XII, Section 3, of the Montana Constitution of 1889, and cases that referred only to “mines” or “mineral lands,” but applied those statutes and cases to questions concerning oil royalties, seemingly oblivious to any possible semantic distinction between “mine” and “well.” The dissent went further and quoted Mid-Northern, conceding that “oil is a mineral and an oil well a mine.” Rist, 117 Mont. at 443, 159 P.2d at 347.
¶50 It is the declared policy of this state to properly and efficiently develop our natural resources. Only a terribly strained interpretation of our laws can reach the result the Court reaches today, and I dissent.

 Ross L. Malone, Jr., Oil and Gas Leases on Federal Lands, 14 Mont. L.Rev. 20, 20 (1953).

 Id.

 See Ozark Chemical Co. v. Jones (10th Cir. 1942), 125 F.2d 1; Carter Oil Co. v. Blair (Ala. 1951), 57 So.2d 64; U.S. v. H.G.D. & J. Mining Co. Inc. (S.D.W.Va. 1983), 561 F.Supp. 315; Standard Oil Co. of California v. Pastorino (Nev. 1978), 580 P.2d 118; Herbert Thorndike Tiffany, Tiffany on Real Property § 589 (3d ed. 1939); Robert E. Sullivan, A Survey of Oil and Gas Law in Montana as it Relates to the Oil and Gas Lease, 16 Mont.L.Rev. 1 (1955).