### Stepp v. Pike County Board of Supervisors, et al.

(Decided March 10, 1922.)

#### Appeal from Pike Circuit Court.

1. Mines and Minerals—Leases.—The lessor and lessee each has a valuable and taxable property in a lease, for mine operations, under the terms of which the lessee agrees to remove all the coal from the land.

2. Mines and Minerals—Leases.—With respect to the taxable interest of the lessor in the lease it is immaterial whether the lease be treated as a sale of the mineral in the land or only as a conveyance of mineral rights, provided the lessor's interest under the lease amounts to property of value.

3. Taxation—Inaccurately Designated Property.—The assessment of inaccurately designated property does not render the assessment illegal if the property might have been properly designated and the assessment made was not excessive but was fair.

4. Pleading—Exhibits.—The allegations of a petition, which are contradicted by the exhibit filed therewith, are not to be accepted as true or as authorizing a judgment in conformity therewith but the facts must be determined as shown to exist in the exhibit.

5. Taxation—Assessment of Coal Royalties.—The assessment of coal royalties for a given year and the assessment of valuable rights in the lease under which the royalties arise for the same year cannot be considered as a double assessment or taxation.

W. W. BARRETT for appellant.

E. C. O'REAR and OVERTON S. HOGAN for appellees.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

The appellant, John Stepp, is the owner of 644.6 acres of land in Pike county. In 1904 he leased to the Borderland Coal Company the exclusive right and privilege of mining and shipping all coal from the land, with the right to build houses, tipple, etc., on the surface. The lessee agreed to pay eight cents a ton royalty on all coal mined and shipped from the premises and to guarantee a minimum annual royalty after the third year of $3,000.00. The Borderland Coal Company later assigned the lease to the Borderland Coal Corporation.

In April, 1920, the board of supervisors of Pike county summoned appellant to appear before it to show cause why he had not listed for taxation, as of July 1, 1919, the minerals and mineral products in and under the land. At that hearing the board assessed against appellant as of that date the coal and minerals in and under the land, at a valuation of $6,446.00. Appellant appealed from the finding of the board to the quarterly court, and that court having sustained the board, then to the circuit court which also sustained the assessment. He is here complaining of the judgment of the circuit court.

The ground of complaint is that the lease is in fact a conveyance of the title to the minerals in the land, and, that position being established, it is assumed that appellant has no assessable interest in the lease. Kincaid v. McGowan, 88 Ky. 91; Ball v. Clark, 150 Ky. 383, and other authorities are cited in which the rule is announced that there may be separate and distinct estates in and separate and distinct conveyances of mineral and surface rights in the same land. These authorities are not questionable but they are not deemed pertinent to the real question at issue. As we view that question it is immaterial whether the lease in controversy conveys an absolute estate in the minerals or only a right to take them from the land. Section 4039 of Kentucky Statutes, as construed in Commonwealth v. R. G. Dunn & Co., 126 Ky. 108; Mt.

Sterling Oil and Gas Co. v. Ratcliff, 127 Ky. 1; Wolf County, etc. v. Beckett, etc., 127 Ky. 252; and Purcell v. City of Lexington, 186 Ky. 381, seems to us decisive of the controversy.

Appellant relies mainly on the case of Wolf County v. Beckett, *supra*, but that case, in our opinion, sustains the view adopted by the lower court in entering judgment in conformity with the ruling of the board of supervisors. There were two questions involved in that case, viz.: (1) Are oil and gas wells held under lease taxable? (2) If they are taxable, who should pay the tax, the lessor or lessee?

In discussing the first question it was pointed out that under section 4020, Kentucky Statutes, all real and personal estate within the state and all personal estate of persons residing in the state are subject to taxation, unless exempt under the Constitution. It was decided that oil and gas wells held under lease are subject to the taxable burdens imposed upon other property by the laws of the state.

Answering the second inquiry, it was held under the lease there presented that the title to the oil and gas was in the lessee; that he owned property in it of recognized value and that it was taxable as against him. The court did not stop there, but, as a necessary incident to the disputed point, decided that both the lessor and lessee had valuable and taxable property in the lease. It was said, "why is not a long lease vesting the lessee with right to take coal not a valuable separate property? The surface owner has lost dominion over the coal. The lessee has complete dominion. Still each has a property, taxable distinctly, if the state elects to do so, because they are different properties and each one ought to pay taxes on his own property." Following this language it was made clear that if there had been any doubt of the purpose of the legislature to tax oil or gas leases, under section 4020 of the Kentucky Statutes, that doubt was removed by section 4039, which is a clear recognition of a purpose to subject to taxation the different kinds of property in leases; that section 4039 fixes the taxable situs of such property in the counties where the land is situated, and distinctly recognizes the separate taxable interests of lessor and lessee. Referring to Mt. Sterling Oil and Gas Co. v. Ratliff, 127 Ky. 1, where the lessor by the terms of the lease received one-sixteenth of the oil produced from the premises, attention was directed to the fact that in

that case it was held that the owner should pay taxes on his interest and "that it was immaterial by what name such property was called, whether personal property, a chattel real, incorporeal hereditament, or privilege, it was nevertheless property and as such was taxable under section 4039 of Kentucky Statutes." Concluding it was announced that appellees were not taxable on the whole value of their oil or gas privileges, that from that value there should be deducted that portion represented by the amount of oil reserved to the lessor and the remainder was taxable against the appellees.

Whatever may be the rule elsewhere, the authorities cited are conclusive in this jurisdiction. They establish the proposition that there should be assessed against the lessor and lessee their respective property interests in leases of this kind. In this view of the law it matters not whether the Borderland Coal Corporation has listed its interest for assessment. It should, however, be required to pay taxes on it, and, similarly, appellant is subject to taxation on the fair value of his interest.

Whether the property assessed against appellant be designated a lease or coal or mineral rights or by some other name, it is a valuable right in appellant amounting to property of value and subject to taxation. It cannot be maintained, as contended, that his property is doubly taxed because he has listed for taxation, for the year in question, the $3,000.00 received by him as royalty. That is property wholly independent of his valuable rights in the lease and the taxation of the two does not amount to double taxation.

It is alleged in the petition, to which a demurrer was sustained, that appellant returned for taxation as of July 1, 1919, his rights in the lease. It is said that on this allegation a reversal should be ordered. If the averments of the petition were considered alone, there would be much force in the suggestion. But there was filed with the petition a copy of appellant's return for that year, which shows that his interest in the lease was not listed for assessment. It also shows that he listed 560 acres of land, including timber on it, "mineral privileges sold," at $3,800.00. He reported coal royalties on 560 acres of land at $3,000.00, the land and royalties together being valued at $6,800.00. The land exclusive of the timber was valued at $5.00 an acre. This valuation of 560 acres of the land in controversy cannot possibly include the valuable rights which he holds under the lease. That they

are valuable is evidenced by the fact that the minimum royalty received by him is $3,000.00 per annum, and, in event of the failure of the Borderland Coal Corporation to pay such royalties, he has the right of forfeiting the lease. Considering the exhibit in connection with the petition it must be held that the property of appellant in the lease was not listed for taxation as of July 1, 1919.

The board of supervisors had no right to assess the lease in its entirety against appellant for that year, but it was proper to assess his rights under it at a fair valuation. The additional assessment of $6,446.00, in our opinion, represents a reasonable valuation of those rights. Having regard for the minimum royalty clause in the lease and the possible greater royalties, under the provision requiring the payment of eight cents a ton on all coal mined, it is manifest that the additional assessment is not unreasonable, and, though it was denominated an assessment of the lease, it could properly be called an assessment of appellant's interest in the lease and must be upheld as such.

Wherefore, the judgment is affirmed.