RIST, RESPONDENT, v. TOOLE COUNTY, ET AL., APPELLANTS.

No. 8513

Submitted March 29, 1945. Decided May 26, 1945.

159 Pac. (2d) 340

428

Mr. W. M. Black, of Shelby, for appellants.
Mr. E. J. McCabe, of Great Falls, for respondent.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Defendants Toole county and the treasurer thereof appeal from a judgment permanently enjoining them from issuing or taking tax deed to certain lands. The cause was submitted upon an agreed statement of facts reciting that on April 16, 1926, one DeGroat was the owner in fee simple of certain lands in Toole county; that on that date he executed, acknowledged and delivered to one Reisinger a written instrument assigning to the latter "an undivided five and one-half per cent (5½%) royalty of and in all of the oil and gas and other minerals produced and saved" from those lands; that on May 12, 1926, said Reisinger by like instrument assigned to the plaintiff an undivided 1/10 of 1% royalty therein; that the said instruments were recorded in the office of the clerk and recorder of that county on May 7 and May 15, 1926, respectively; that the lands are in the Kevin-Sunburst oil field, in which oil and gas in paying quantities had theretofore been discovered and produced; that the land had a separate surface value for agricultural and grazing purposes; that the county assessor assessed the land to DeGroat for taxation for the years 1927 to 1940, inclusive, "on the value of the whole thereof including the value of the probable oil and gas production therefrom and without in any manner segregating the independent surface value of said lands from the value of the probable oil and gas production therefrom and without segregating the value of the interest of said Walter DeGroat from the value of the interest of plaintiff in said lands"; that the taxes were levied on the basis of such assessments and were not paid for 1927; that on February 2, 1928, the county treasurer sold the lands to Toole County for the said taxes and issued a certificate of sale to the county; "that Toole County, Montana, has heretofore on the 20th day of November, 1940, given plaintiff and other persons interested in said lands,

written notice in conformity with the statutes of Montana'' of its intention to apply for a tax deed embracing said lands; ''that there are approximately forty-five owners of oil and gas royalties in and to aforesaid lands which royalties are of the same character as the royalty interest of plaintiff whose rights will be prejudicially affected by the issuance of the aforesaid tax deed * * *.'' The transfers of royalty were by written documents entitled ''Assignment of Royalty'' and transferred fractional ''royalty of all of the oil and all of the gas produced and saved'' from the land. They recited ''and I do hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said premises.''

The judgment decreed that all assessments and tax levies for the years 1927 to 1940, inclusive, were wholly void, and permanently enjoined the defendants from executing or issuing, and defendant county from demanding or receiving, any purported tax deed based upon sale for collection of tax levies for those years, or any thereof.

Plaintiff's and respondent's contention is that his oil and gas royalty interest constitutes a separate fractional mineral title in fee simple segregated from the rest of the fee title to the land, and that the combined assessment of the mineral interest with that of the remaining interests in the land, without segregating the respective interests of the various owners, was wholly void and will not support tax deed proceedings.

Defendants' contention is that the oil royalty is not a fee-simple interest in the land since it relates only to personal property, namely, to oil and gas after production and severance from the real estate; that it, therefore, like the oil lease, constitutes only a profit a prendre which, although an interest in land, is not a separate fractional title in fee, but is incident to and dependent upon that title and falls with it upon issuance of tax deed; that it can be protected only by due payment of or redemption from the tax levied against the fee-simple title.

The question therefore is whether the royalty assigned to

plaintiff constitutes an undivided fractional fee-simple interest in the oil, gas and other minerals in place, segregated from the balance of the fee-simple title and therefore to be taxed separately and not included with DeGroat's fee-simple interest for taxation purposes.

It is well settled that the title to mineral interests in land, ■ including oil and gas interests, may be segregated in whole or in part from the rest of the fee-simple title (Krutzfeld v. Stevenson et al., 86 Mont. 463, 284 Pac. 553; Broderick v. Stevenson Consolidated Oil Co., 88 Mont. 34, 290 Pac. 244; Hodgkiss v. Northland Petroleum Consolidated, 104 Mont. 328; 67 Pac. (2d) 811), and that the separate fractional titles should be taxed separately to their several owners. Northern Pacific Ry. Co. v. Mjelde, 48 Mont. 287, 137 Pac. 386; Anaconda Copper Mining Co. v. Ravalli County, 52 Mont. 422, 158 Pac. 682; Musselshell County v. Morris Development Co., 92 Mont. 201, 11 Pac. (2d) 774. The method of taxation of separate mineral interests has been considered by this court on numerous occasions but need not be examined here. The issue presented by this appeal is whether the royalty interest in question constitutes such fee-simple interest in the land as is taxable as real estate separately from the balance of the title.

This court long ago adopted the standard and universal ■ definition of royalty. In Hinerman v. Baldwin, 67 Mont. 417, 215 Pac. 1103, 1108, it said: "The word has a very well understood and definite meaning in mining and oil operations. As thus used, it means a share of the produce or profit paid to the owner of the property. Webster's Dictionary." The expression "a share of the produce or profit paid to the *owner* of the property" is quite different from a share or interest in the property itself. It recognizes that the originator of the royalty is still the owner of the real property to which it relates, and that the assignee's interest is only in the "produce or profit" therefrom,—namely, in the personal property which the owner is to receive for the granted privilege of producing minerals from his land.

This court repeated the same definition in Homestake Exploration Corporation v. Schoregge, 81 Mont. 604, 264 Pac. 388, 391, and proceeded to say:

"The general rule is that: 'Both petroleum and gas, as long as they remain in the ground, are a part of the realty. They belong to the owner of the land, and are a part of it as long as they are on it or in it, or subject to his control.' Gas Products Co. v. Rankin, 63 Mont. 372, 207 Pac. 993, 24 A. L. R. 294; 18 R. C. L. p. 1205; Mills-Willingham on Oil and Gas, pp. 20, 21.

" 'The owner of the fee has the same title to the oil and gas in place which characterizes the ownership of solid minerals in like circumstances, but by his lease, regardless of the form of the granting clause, he does not intend to convey the oil and gas in place or any interest therein. * * * By a lease of this description the lessee is vested with a present property right in the leased premises, namely, to search for oil and gas under the conditions of the lease and to appropriate them as personal property if found, yielding the stipulated royalty. This is a right to take a profit from the lands of another, and within the common law classification may be regarded as a profit a prendre.' Veasey on Oil and Gas, 18 Mich. Law Review, 773. * * *

"By the provisions of these leases and the assignments the operator or lessee is given merely a right to enter upon the land for the purpose of exploring for oil, and developing and producing the same, if found. The lessee acquires no corporeal interest in the land itself, but rather a privilege a prendre. Until the actual discovery of oil, the interest of the lessee in the land is inchoate. Oil remaining in the ground before recovery is a part of the land, and belongs to the owner of the land; but, when recovered, it becomes personal property. Such personalty is thereupon subject to division in accordance with the terms of the contract of lease."

In that case this court pointed out that the royalty, whether of the kind known as landowner's royalty or that known as overriding royalty, constituted an interest in the privilege of

producing minerals, and in the personal property when and as severed and produced from the land, but not an interest in the minerals in place; in other words, it is a privilege a prendre, and not a·portion of the fee-simple title. To the same effect is Broderick v. Stevenson Consolidated Oil Co., supra.

Again in Northern Pacific Ry. Co. v. Gas Development Co., 103 Mont. 214, 62 Pac. (2d) 204, 206, this court spoke of "the royalty, which only accrues as a result of the production of oil or gas."

Thus the concept of royalty is very different from that of the fee-simple title to minerals in place in the ground, as involved in Krutzfeld v. Stevenson et al.; Broderick v. Stevenson Consolidated Oil Co.; and Hodgkiss v. Northland Petroleum Consolidated, supra. The difference is well summarized as follows in Hickey v. Dirks, 156 Kan. 326, 233 Pac. (2d) 107, 109, "As we have had frequent occasion to observe, terms relating to conveyance of oil and gas interests have often been loosely and inaccurately used. (Citing cases.) This is particularly true with reference to the term 'royalty.' A mineral deed is one which involves a severance, from the fee, of a present title to minerals in place. It either effects such severance of title in the first instance or conveys a part of such mineral ownership previously carved from the fee. It is a realty conveyance. (Citing cases.) 'Royalty' is that part of oil and gas payable to the lessor by the lessee out of oil and gas produced. It is sometimes referred to as part of the compensation to the title owner for the privilege of exploring, developing, and producing oil and gas from the tract."

Glassmire's "Oil and Gas Leases and Royalties," 2d Ed., clearly explains the difference as follows:

"A mineral deed is an instrument in the form of a general warranty deed which grants or transfers the minerals in place, or the right to obtain them. It conveys the minerals themselves, which produce. the royalty, subject to the lease. To avoid confusion of terms, the distinction must be kept clearly in mind between the thing itself and the proceeds of the thing.

"It was recognized that simple assignments of royalty proper, accruing under a lease, conveyed nothing except proceeds when and as obtained, or purely personal property interests. Something more definite and perpetual was demanded, and the mineral deed, as covering oil and gas, then came into its own and accomplished its primary purpose of separating the fee estate in the minerals from the fee estate in the land, not as an operating contract, but as an instrument by which royalties might be obtained in the same way as the owner of the land might obtain them. A royalty proper is a participation in the proceeds derived under the terms of the lease. A mineral deed is not a 'royalty' but is an evidence of mineral ownership, or the rights thereto, which interest may or may not produce a royalty under an existing or subsequent lease. * * * (Section 23.)

"Mineral deeds are often erroneously called 'royalty deeds,' but that designation is a misnomer for it confuses the royalty proper with that which produces the royalty, or rather it mistakes the proceeds of the thing for the thing itself. * * *

"A conveyance or assignment of royalty for a definite or indefinite term of years does not anywhere constitute a grant of minerals, and no severance from the land is consummated under them. Even in Texas, an ownership state, it has been held that an assignment of rents and royalties accruing under an existing lease amounts merely to a transfer of personal property and is not such a conveyance of land as to bring it within the statute of frauds." (Section 21.)

The subject is similarly discussed in 3 Summers Oil and Gas, Perm. Ed., Chapter 20, in which that authority says, at page 500: "Purchasers of oil and gas rents and royalties have apparently realized partially, if not fully, the precarious nature of the interest procured by a deed granting only rents and royalties under existing and future leases. Consequently many of the royalty deeds now in use purport to grant, not only the rents and royalties under an existing lease, but in addition a proportionate interest in the present or reversionary mineral

fee, so that upon expiration of the existing lease the grantor and grantee, or their successors in interest, become owners of the oil and gas and other minerals under the land as tenants in common with legal powers to execute, jointly, a new lease. It would seem to be a simple matter to make this type of conveyance so that there would be no doubt as to the extent and character of the interest or interests conveyed.'' In a note the author refers to a number of cases in which such deeds of mineral interests are found, including Hochsprung v. Stevenson, 82 Mont. 222, 266 Pac. 406; Krutzfeld v. Stevenson, supra; Broderick v. Stevenson Consolidated Oil Co., supra, and decisions from Arkansas, Kansas, Kentucky, Texas and West Virginia.

It will be noted that Professor Summers refers to the fact, ██ ██ mentioned above in connection with our discussion of the definition of "royalty," that if the conveyance is of a portion of the fee-simple title to minerals in the ground, the grantee becomes a tenant in common wtih the grantor as to that title and must join in subsequent leases; otherwise his interest will not be included. Therefore the grant of royalty under future leases is inconsistent with an intention to convey part of the mineral title itself.

The authorities emphasize that it is only by virtue of his ownership of the minerals in place that the lessor is entitled to exact a royalty of part of the oil and gas produced, but that it is neither necessary nor usual for him to convey any part of the mineral title in order to transfer the corresponding royalty interest. Thus where only a royalty interest is purported to be transferred there is no justification for an attempt to read into the grant another and greater interest. This is true whether the express recital is of a royalty interest in general, or of a royalty interest under an existing lease, or of a royalty interest under any and all leases thereafter given. In fact, where the instrument, as here, expressly purports to include royalties under future leases, it is logically impossible to infer the conveyance of mineral interests. For, as noted above, it is im-

possible for the grantor to make leases covering mineral inter-
ests theretofore conveyed to others, and futile for him to
attempt the assignment of the corresponding royalties. It fol-
lows that the express assignment of royalty in future leases
utterly negatives an intent to convey title to the assignee so
as to make him a tenant in common, with full authority over
his own share of the ownership. It is only where no title, but
only a royalty interest is transferred, that a reference to roy-
alty under future leases can have any meaning.

The most recent case we have found concerning a transfer
of royalty interest under both existing and future leases is
Riffel v. Dieter, 159 Kan. 628, 157 Pac. (2d) 831, 836, just re-
ported in the advance sheets for May 11, 1945. The court said:
"Clearly the primary purpose of the instrument was to convey
to Dieter one-half of the *royalty* rights of the Riffels in any
production on the 280 acres. * * * Nowhere in the instrument
are there any provisions which could be construed as convey-
ing to Dieter any interest in the minerals in place." Exactly
the same is true as to the purpose and effect of the royalty
assignment here involved.

Decisions can be found expressing, or seeming to express,
various shades of opinion as to the effect of the reservation
or assignment of royalties upon the fee-simple title to minerals
in and under the land; but the differences or apparent differ-
ences have usually resulted from a failure to distinguish be-
tween royalties and mineral interests.

A clear instance of this confusion is plaintiff's reliance upon
Broderick v. Stevenson Consolidated Oil Co., supra; Krutz-
feld v. Stevenson et al., supra; and Marias River Syndicate v.
Big West Oil Co., 98 Mont. 254, 38 Pac. (2d) 599, 600, as
authority for the proposition that the grantee of a royalty
interest thereby "acquires and is vested with ownership in
perpetuity of an interest in fee of land." But the first two of
those cases involved, not royalties, but mineral deeds expressly
conveying fractional interest "in and to all the oil, gas and
other *minerals in and under*" the land, and "in all oil, gas

and other *minerals in and upon* said land." In the Marias River Syndicate case the owner conveyed the lands with reservation of a fractional *"interest* and royalty in and to all oil and gas and other minerals of whatsoever nature, *found in or located upon or under* said land or premises above described, or that may be produced therefrom." The final phrase, "or that may be produced therefrom," is the only part of the reservation referring to production or severance of minerals. This court therefore correctly decided that the effect of the reservation could not be narrowed by that phrase, or by the use of the word "royalty." It said in conclusion upon this point: "This reservation or exception in effect legally and successfully severed the 12½ per cent *interest* in the oil and gas and other mineral in and under the land from the residue of the oil, gas, and mineral and surface rights conveyed to the grantee in the deed in question. Separate *interests* in the oil and gas were thereby created, and the owners of these respective *interests* became the owners of the oil and gas as tenants in common."

The court was not there speaking of a royalty interest. It expressly distinguished between a mere royalty interest and a conveyance of an interest in the mineral title, and indicated that a mere royalty assignment, like an oil lease, does not constitute a conveyance of part of the estate in fee, but only an assignment of a right dependent upon the assignor's fee.

We have found no Montana decision to the contrary. Fulton Oil Co. v. Toole County, 86 Mont. 367, 283 Pac. 769, has no reference to real property; it relates only to personal property, i.e., to oil produced, and to net proceeds taxes thereon.

There are some decisions to the contrary, notably in California, whose courts reject the principle, well settled in Montana, that fee-simple interests can be created in oil and gas in place underground; they therefore recognize no difference between royalty assignments and mineral deeds.

As noted above, plaintiff's sole contention is that the royalty interest is separately taxable because it constitutes "an inter-

est in fee of land.'' The dissent, however, suggests the further question whether under our statutes real property taxes are limited to fee-simple titles. It is true that section 1996, Revised Codes, provides that, for taxation purposes ''The term 'real estate' includes:

''1. The possession of, claim to, ownership of, or right to the possession of land.

''2. All mines, minerals, and quarries in and under the land, subject to the provisions of section 2088 of this code, all timber belonging to individuals or corporations growing or being on the lands of the United States, and all rights and privileges appertaining thereto.

''3. Improvements.''

Reference is made to the second part of the definition. However, that is expressly made ''subject to the provisions of section 2088 of this code,'' which provides, in accordance with section 3 of Article XII of the Constitution of Montana, that ''all mines and mining claims, both placer and rock in place, containing * * * valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor.'' The only other provisions are that any separate and independent surface value of such mine or claim shall be taxed at its full value for such other purposes; that machinery and surface improvements having a value separate and independent of mines and mining claims shall be taxed as other personal property, and that the annual net proceeds of all mines and mining claims shall be taxed as other personal property.

Assuming what the record does not show, that this land ▮ was purchased from the United States as mines or mining claims, either placer or rock in place, certainly a royalty interest does not constitute a surface value, or machinery, or improvements with a value independent of such mines or mining claims. Therefore if included in the first three items of section 2088 at all, it is merely as an incident to the mine or mining claim, which is to be taxed ''at the price paid the

United States therefor." It is not included in the fourth item, "annual net proceeds," which are to be taxed "as other personal property"; for it is not such proceeds, but represents only the right to a portion of proceeds which may possibly follow in the future. Thus that subdivision of the definition does not support the dissent.

Apart from the express reference to section 2088, the provision is only one of three subdivisions of the definition. If it contemplates a separate assessment and taxation of the various items mentioned, so do the other two subdivisions. The first subdivision refers to the "right to the possession of land." However, it does not follow that the assessor must attempt the separate assessment of every separate possessory interest or right in land, whatever its character. Tenants, like lienholders and the owners of other interests less than the fee, understand that their interests are not independent of, but are dependent upon the landowner's title, and usually therefore are not separately assessed and taxed. A month to month lease gives a right to the possession of land, but such tenancy has never been considered as an estate taxable separately from the fee. The same is true as to all ordinary tenancies constituting less than an estate of inheritance, including even an estate for life. With respect to the latter the law is not that it shall be taxed separately from the fee, but that "the owner of a life estate * * * must pay the taxes" (Sec. 6776, Rev. Codes), which means the entire tax upon the land itself. Anderson v. McClenathan, 62 Mont. 387, 205 Pac. 230.

The general rule is stated by textwriters as follows: "Ordinarily, a leasehold interest, although technically a chattel, is not assessable as such against the owner thereof, but is regarded as one of the lesser interests to be included in the single assessment against the owner of the freehold estate in the land. However, * * * under some statutes a leasehold must be valued separately." 61 C. J. 632, sec. 779. "Land or any estate or interest therein is undoubtedly property; but inasmuch as a parcel of land is generally taxed as a unit, the

different estates or interests therein are not separately assessed." 51 Am. Jur. 437, sec. 415. The latter rule has been changed in Montana, but only as to separate interests in fee. Northern Pacific Ry. Co. v. Mjelde; Anaconda Copper Mining Co. v. Ravalli County; and Musselshell County v. Morris Development Co., supra.

The only references we have found to the separate taxation of any of the various items included in the three subdivisions of the above definition of "real estate" in section 1996 are the provisions that the improvements (subdiv. 3 of the definition) shall be assessed separately from land (Sec. 2001); and the provision of the classification statute (Sec. 1999) as follows, with regard to Class One (taxable at one hundred per cent of its full value under section 2000): "* * * where the right to enter upon land to explore or prospect or dig for oil, gas, coal, or mineral is reserved in land by any person or corporation, the surface title to which has passed to another, the assessor and the state and county boards of equalization shall determine the value of the right to enter upon said tract of land for the purpose of digging, exploring, or prospecting for gas, coal, oil, or minerals, and the same shall be placed in this classification for the purpose of taxation."

Obviously the royalty right in question here does not come within that provision. There may be other express statutory provisions altering the general rule stated above, but if so they have not been cited. On the contrary, section 1999 classifies "all *land,* * * * with improvements" in Class Four for taxation upon a basis of thirty per cent of its true value, and, as noted above, section 2001 provides that *"land* and the improvements thereon must be separately assessed." With the possible exception noted (section 1999, Class One) we find no statute which suggests the separate assessment or taxation of less than the *land* itself (the fee-simple estate therein). Certainly the use of the word "land" without qualification seems to negative any intention that any of the minor possessory or other rights mentioned in section 1996 shall be assessed and

taxed separately from the land itself, except as expressly provided by law. But whatever the rule, it must apply to subdivision one of the definition no less than to subdivision two.

It may be, as suggested, that it is the assessor's duty, under general statutory provisions, separately to assess and tax as real estate all the various types of tenancies and rights therein amounting to less than estates in fee, including royalty interests as distinguished on the one hand from operating rights or interests in fee simple and on the other hand from cash royalties actually paid (taxable under section 2088 ff., as personal property). But as noted above, the general rule is otherwise and has not been shown in this case to have been changed by statute.

A tax deed is not derivative but "creates a new title in the ▮▮▮▮ nature of an independent grant from the sovereignty, extinguishing all former titles and liens not expressly exempted from its operation." Sec. 2215, Rev. Codes; State ex rel. City of Great Falls v. Jeffries, 83 Mont. 111, 270 Pac. 638, 640; Richardson v. Lloyd, 90 Mont. 127, 300 Pac. 254. It therefore strikes down, not only the former owner's fee title, but all encumbrances and incidents thereof, including oil leases and assignments of royalty interests. Like mortgages and other interests dependent upon the fee, leases and royalty interests must be accepted subject to that legal limitation and to the circumstance that it may become necessary to see that the taxes upon the fee are paid in order to preserve rights dependent thereon.

It follows that the remedy of plaintiffs and others similarly situated is not to enjoin the taking of a tax deed, but to prevent it by a redemption of the land from the tax lien. The decree is therefore reversed and the cause remanded with directions to dismiss the complaint.

Associate Justices Morris, Adair, and Cheadle, concur.

Mr. Justice Angstman, (dissenting).

The question before us is this: May the grantee of a landowner's royalty in oil lands holding by an instrument duly

acknowledged and recorded lose his rights by tax sale proceedings against the grantor, owner of the land, and to which the grantee was not a party and had no notice?

It seems to me the answer to the question depends upon whether the grantee has what may be called a mineral interest in the land which must be assessed, if at all, to him and to no one else, or whether the recorded royalty interests are to be reduced to the level of scraps of paper. It must, of course, be conceded that oil is a mineral and an oil well a mine. Mid-Northern Oil Co. v. Walker, 65 Mont. 414, 211 Pac. 353. It is also well settled, and my associates concede, that separate divisible interests in a mine or mining claim may be created. Homestake Exploration Co. v. Schoregge, 81 Mont. 604, 264 Pac. 388. It is also well settled that a person cannot be taxed upon property which he does not own. Northern Pac. Ry. Co. v. Musselshell County, 74 Mont. 81, 238 Pac. 872; Western Ranches v. County of Custer, 28 Mont. 278, 72 Pac. 659; Homestake Exploration Co. v. Schoregge, supra.

It is my contention that the owner of a landowner's royalty in oil lands has an interest in a mine or mining property which must be assessed to him, if assessed at all, and that he may not be divested of his interest by an assessment of the land to the original owner who has parted with such royalty interest.

My associates seem to concede that this would be the rule if the landowner's royalty actually conveyed the oil in place but draw a distinction in this case because of the wording of the conveyance which is a stated percentage of the "royalty of and on all of the oil and gas and other minerals produced and saved" from certain lands. I concede that royalty after it has been produced is personal property, but my belief is that royalty which is the right to receive a certain percentage of the oil from certain described lands, Byrne v. Fulton Oil Co., 85 Mont. 329, 278 Pac. 514, is an interest in those lands—a mineral interest and an interest that constitutes real property. Denver Joint Stock Land Bank of Denver v. Dixon et al., 57 Wyo. 523, 122 Pac. (2d) 842, 140 A. L. R. 1270.

What possible difference is there in a grant of five per cent of "all oil in and under certain described land" and five per cent of "all oil produced and saved from" the same land? The grantee would have no greater right in the one case than in the other. In each instance the grantee obtains only the right to receive the oil when it is captured and brought to the surface. But if one is actually different from the other, the one who has five per cent "of all oil produced and saved" has a more valuable right than the one who has five per cent of "all oil in place" because the latter must bear his proportionate share of the cost of extracting and marketing the oil, Marias River Syndicate v. Big West Oil Co., 98 Mont. 254, 38 Pac. (2d) 599, while apparently the former does not.

My associates stress the definition of "royalty" and point out that it is a privilege a prendre but they overlook what this court said in Williard v. Federal Surety Co., 91 Mont. 465, 8 Pac. (2d) 633, 635:

"'Profit a prendre' is defined as 'the right to take a part of the soil or produce of the land. A right to the products or proceeds of land. This right, if enjoyed by reason of holding another estate, is regarded as an easement appurtenant to the estate; whereas, if it belongs to an individual, distinct from ownership in other lands, it takes the character of an interest or estate in the land itself, rather than that of a proper easement.' Anderson's Dictionary of Law, p. 822. It is an interest in land (Summers on Oil & Gas, p. 169), although incorporeal (Gas Products Co. v. Rankin, supra).

"In our opinion the right of a lessee to take oil or gas stratum from its place and convert it to the lessee's own use is an interest in real estate within the meaning of section 9262 of the Revised Codes 1921, relative to the attachment of real estate. Graciosa Oil Co. v. Santa Barbara County, 155 Cal. 140, 99 Pac. 483, 20 L. R. A., N. S., 211."

This was reiterated in Marias River Syndicate v. Big West Oil Co., supra [98 Mont. 254, 38 Pac. (2d) 601], where we said: "The right to take a profit from the lands of another

within the common-law classification may be regarded as a profit a prendre. Homestake Exploration Corporation v. Schoregge, supra. This right, if it belongs to the individual distinct from the ownership in other lands, takes the character of an interest or an estate in the land itself. It is an interest in the land, although incorporeal.''

My associates, I think, are in error in supposing that there can be no severance of separate mineral interests without a grant of part of the minerals in place. I think a mineral interest may be conveyed without conveying minerals in place. It is the right to receive the stated royalty that constitutes an interest in real estate. As was said by the United States Supreme Court, speaking through Mr. Justice Washington, in Green v. Biddle, 8 Wheat. 1, 76, 5 L. Ed., 547: ''A right to land essentially implies a right to the profits accruing from it, since, without the latter, the former can be of no value. Thus, a devise of the profits of land, or even a grant of them, will pass a right to the land itself. Shep. Touch. 93; Co. Litt. 4b. 'For what,' says Lord Coke, in this page, 'is the land, but the profits thereof.' ''

In Drusadow v. Wilde, 63 Pa. 170, the court said: ''But there is no construction of words older and better settled than that a grant or devise of the profits of land passes the land itself.''

In Toothman v. Courteney, 62 W. Va. 175, 58 S. E. 915, 918, it was said: ''Though he did not reserve by name the oil in place, or any part of it, his reservation of all the rental or royalty to be derived from it compels the court to hold, by construction of the instrument, that it vests in him the title to that thing, the beneficial use whereof has been reserved, namely, the oil in place.''

In Weakland v. Cunningham, 7 A. 148, 3 Sad., Pa., 519, it was said: ''The following reservation in a deed: 'Excepting the profits of one-half of all the stone coal, and of all other kinds of mineral, which may be discovered at any time hereafter,'—is a reservation of the corpus of all such coal and mineral in place.''

In Updegraff v. Blue Creek Coal & Land Co., 74 W. Va. 316, 81 S. E. 1050, it was held that a reservation of oil and gas royalties was a reservation of the oil and gas in place.

In Paxton v. Benedum-Trees Oil Co., 80 W. Va. 187, 94 S. E. 472, 475, the court said: "We are clearly of the opinion that the grant of one-half of the royalties, rents, and income from the oil is a grant of one-half of the oil in place." That, in effect, is what was held in Marias River Syndicate v. Big West Oil Co., supra. The particular reservation involved in the latter case read as follows: "Reserving unto the said parties of the first part a 12 1/3 per cent. interest and royalty in and to all oil and gas and other minerals of whatsoever nature, found in or located upon or under said land or premises above described, or that may be produced therefrom." There is nothing in that reservation that suggests retention of title to oil or gas in place and yet that is what this court said it meant.

A covenant to give to a lessor a portion of all oil as rent or royalty is a covenant running with the land. Akin v. Marshall Oil Co., 188 Pa. 602, 614, 41 A. 748; Fennell v. Guffey, 139 Pa. 341, 20 A. 1048; Edmonds v. Mounsey, 15 Ind. App. 399, 44 N. E. 196; Swiss Oil Corporation v. Dials, 232 Ky. 298, 22 S. W. (2d) 912. That is the effect of the holding in Aronow v. Bishop, 107 Mont. 317, 86 Pac. (2d) 644. And a royalty interest retained by a lessor is an estate in land. Taylor v. Higgins Oil & Fuel Co., Tex. Civ. App., 2 S. W. (2d) 288; Broderick v. Stevenson Consol. Oil Co., 88 Mont. 34, 290 Pac. 244; Homestake Exp. Co. v. Schoregge, supra; Marias River Syndicate v. Big West Oil Co., supra.

A case which I think is parallel to this is that of Shaw v. Watson, 151 La. 893, 92 So. 375, 376, where the landowner held a "sixteenth of the oil produced from an area of 1,275 acres, and the right to receive a thirty-second of the oil produced from the remaining area of 700 acres." The assessor taxed him on the whole oil-producing value including the value of

mineral rights belonging to others. The court held this was improper, saying:

"The royalty interest of a landowner in oil-producing land is a part of his interest in the land. There is no reason why the royalty interest of the landowner should be assessed separately from his interest in the land for any other value that it has. But a sale of a landowner's royalty interest in oil-producing land, or a sale of his mineral rights, either in whole or in part, is a conveyance of a part of his ownership of the land. And it makes no difference, in that respect, whether a conveyance of the mineral rights be styled a sale or a lease.

"The main argument of the appellants in this case is that an assessment of land for taxes is a proceeding in rem, and that every element of its value should be included in the assessment. There is no dispute about that. But it does not follow that elements of value not owned by the owner of the surface should be assessed to him, or added to the assessment of the surface to him.

"It is argued that a transfer of a landowner's mineral rights, either in whole or in part, whether in the form of a sale or a lease, is nothing more than the imposing of an incumbrance upon his land, like a mortgage, or an ordinary lease for occupancy or cultivation. Our opinion is that a landowner's sale of his mineral rights cannot be compared, in that respect, with his mortgaging his land, or subjecting it to an ordinary lease for occupancy or cultivation. It is settled in this state that a sale of a landowners right to the oil or gas beneath his land is an alienation of a real right, which, with regard to the prescription by which such rights are released, is classed as a servitude upon the land. Frost-Johnson Lumber Co. v. Salling's Heirs [150 La. 756], 91 So. 207. Such a right, of course, is incorporeal property, in the category of immovable property or real estate. Strother v. Mangham, 138 La. 437, 70 So. 426; Hanby v. Texas Co., 140 La. 189, 72 So. 933. A sale of a land owner's mineral rights, either in whole or in part, is therefore an alienation of a part of his interest in the land. It is a dis-

memberment of his ownership, as held in Frost-Johnson Lumber Co. v. Salling's Heirs. In that respect it is more like a sale of an undivided interest in the land than like the imposing of a mortgage or an ordinary lease upon the land. A mortgage or an ordinary lease is not a transfer of any element of ownership in the property mortgaged or leased. For that reason mortgages and ordinary leases are not subject to taxation by the Revenue Law (Act 170 of 1898). The distinction between them and a conveyance of mineral rights in the form of a lease is recognized by the courts of other states. (Citing cases.)''

To the same effect is Humble Oil & Refining Co. v. State, Tex. Civ. App., 3 S. W. (2d) 559, which case draws attention to the fact that the several mineral interests are taxable to the several owners, each to the extent of his interest after the mineral estates have been severed by the original owner. The conveyance of the several royalty interests constituted a severance of the mineral estates, Marias River Syndicate v. Big West Oil Co., supra, which are taxable to the owners thereof respectively. Fulton Oil Co. v. Toole County, 86 Mont. 367, 283 Pac. 769. And see Stepp v. Pike County Board of Sup'rs, 194 Ky. 176, 238 S. W. 408. A commingling of these values with other surface values for tax purposes and all assessed to one owner renders the assessment void. Hinz v. Musselshell County, 82 Mont. 502, 267 Pac. 1113.

I think my associates are not justified under the law in limiting real property taxes to fee-simple titles. Section 1996, Revised Code, defines ''real estate'' in part as follows: ''2. All mines, minerals and quarries in and under the land, subject to the provisions of section 2088 of this code, * * * and all rights and privileges appertaining thereto.'' This plaintiff, as owner of landowner's royalty, has rights and privileges appertaining to mines and minerals within the meaning of the statute.

A case which I think supports my contention and holds contrary to the views of my associates is that of Graciosa Oil Co. v. Santa Barbara County, 155 Cal. 140, 99 Pac. 483, 485, 20

L. R. A., N. S., 211. That case involved a statute defining "real estate" identical with our section 1996, Revised Codes, except that it does not have the clause, "subject to the provisions of section 2088 of this code." In that case plaintiff held an oil lease containing this clause: "in the event that oil is found, the lessee agrees to deliver or pay as rent or royalty to the said lessor * * * the one-tenth part or share of so much of all the crude oil or petroleum, naphtha, or maltha which may be produced and saved by the lessor from said wells and operations on said premises." The plaintiff contended that there could be but one assessment of the lands and that to the lessor and that the lessee was not taxable. The court held otherwise. The court pointed out too that plaintiff "does not own an absolute present title to the oil strata in place." The court in holding that plaintiff's interest was taxable as real estate said:

"The royalty is frequently fixed before the discovery of oil, usually at a time when the existence of oil in profitable quantities is a matter of conjecture, and without regard to the adjustment between the parties of the burden of taxation upon the respective interests. The value represented by the royalty is ordinarily very small, as compared to that of the right of the lessee. After the discovery of oil in such leased ground, the value of the lessor's real interest and right is much less than it would be if he had the whole estate, including all the oil thus discovered. There is no real parallel between such a case and that of a lessor under an ordinary lease for occupation and use. It is well known that such leasehold estates or interests in oil strata, after a discovery of oil, often command large prices in the market, out of all proportion to the value of the interests of the landowner receiving only the royalty and enjoying the use only for other purposes. The right of the lessee under this contract is more than that of the ordinary lessee. It is of a different character and for a different purpose. He has no right at all to the usufruct of the soil. His right extends to the extraction of a certain part of the substance of the land itself, to its permanent separation and

removal and its conversion to his own use. The whole object of the contract is to effect, if not technically a sale and conveyance of a substantial and specific part of the land, at least a disposition and transfer thereof to another.

"It can be easily seen that the reasons for the rule applicable to ordinary leases for the use only that the entire estate should be assessed to the lessor are entirely lacking here, and that it would be a more just and reasonable adjustment of the burden of taxation of such oil leases to assess each party separately with the value of his right or estate in the land."

The court in holding that the interest was real estate under subdivision 2 of their statute which is identical with subdivision 2 of our section 1996 except for the clause above quoted, said: "The oil strata also constitute 'minerals in and under the land,' and the rights and privileges of plaintiff under the lease are clearly 'rights and privileges appertaining' to such minerals, and consequently are real estate within the meaning of the second subdivision aforesaid." That case was cited with approval by us in the case of Williard v. Federal Surety Co., supra.

I do not think that the clause "subject to the provisions of section 2088 of the code," detracts from the taxability of rights and privileges appertaining to mines and minerals. All that is meant by that clause is that section 2088 must be read in pari materia with section 1996 so that the taxation under section 1996 shall not conflict with any of the provisions of section 2088, the latter being a reiteration of section 3, Article XII of the Constitution. I do not find anything in section 2088 which prohibits the severability of interests in mines and minerals for tax purposes. Certainly if the owner of the land when he leases it as in the Graciosa case without passing title to the lessee of the oil in place, grants a right or privilege in a mine or minerals, then he also does so when he conveys a royalty interest as here even though he does not pass title in fee to the oil in place.

That there is a wide difference between the rights of the

holder of a landowner's royalty and the tenant under an ordinary lease is well illustrated by the above-cited cases. Moreover, it seems to me folly to talk of a fee-simple title to oil in place under the ground, although I realize that some courts have used language which would imply that such a thing is possible. The fugacious character of oil necessarily makes such a title merely a paper right with no method of enforcement except by bringing the oil to the surface. In other words, if the oil before capture escapes to the land of another the supposed fee-simple title has necessarily vanished.

I think it is impossible to have an effective fee-simple title to oil under the ground before it has been taken into actual physical possession. Whatever may be the wording of the grant, an oil royalty on certain lands is but the right or privilege of receiving a portion of the oil therefrom or of its value when brought to the surface. And I think that right is an interest in real estate, which can be divested by tax sale proceedings only by separately taxing it to the owner of the royalty interest and not to some one else. Taxation of different interests in the same property to different persons is not a new thing in taxation. 61 C. J. 141. I think the court was right in the case of Sheffield v. Hogg, 124 Tex. 290, 77 S. W. (2d) 1021, 1024; Id., 124 Tex. 290, 80 S. W. (2d) 741, when it said:

"Endeavoring to reach the true purpose and intent of parties, we can draw no substantial difference, so far as taxation is concerned, between an agreement excepting from a grant or a lease a certain fractional portion of minerals, or an agreement reserving the same portion, or an agreement that the lessor 'shall have' or rather shall continue to have the same portion, or an agreement that the lessees shall yield or shall deliver to the lessor exactly the same portion. In either instance, the title to the specified mineral portion is intended to remain or vest, and does actually remain or vest in the lessor. It logically can make no difference, as may have been intimated in this justice's and in other far greater jurists'

reasoning, whether the oil is retained by the lessor as oil and gas, readily convertible into cash on the market, or whether the lessee is given a power to sell all of the oil and gas, always accounting for a fixed royalty portion to the lessor. Sound principle, supported by the highest authority, goes further and compels us to accede to the proposition that dealing with oil and gas or dealing with solids in place, like sulphur, lignite, salt, coal, or lime, the lessor owning the entire fee-simple title to the land, and his assigns, who have been careful to secure to themselves, their heirs or assigns (by exception or reservation or by contract for 'having' or yielding or paying, or for delivery, or by what-not similar contractual clause), the right to a portion of the proceeds or profits derived from the lessee's or his assigns' authorized sale of the minerals, throughout the duration of a determinable fee, which may be perpetual, have and own a fee-simple interest in the land, or at least have a right belonging or appertaining to the horizontal strata of the land in which the minerals are embedded. Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607; Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S. W. (2d) 1039, 60 A. L. R. 890. We therefore hold that all the property interests of ascertainable value, secured to the lessors or their assigns under the Hogg-Hamman lease, are subject to taxation as real estate in the county wherein the land lies, as adjudged by the district court.''

The court stressed the importance of its conclusion by saying: ''The oil industry of Texas is largely dependent for development, growth, or prosperity, on the doctrine that the interests we are considering—such as the lessee's and the lessor's estates under contracts which are in customary use in Texas—are interests in land; and hence not subject to parol sale, but have the protection of the statute of frauds, the statutes regulating conveyances and mortgages of real estate, and the statutes requiring the record of instruments affecting title to or liens on land, so that purchasers can rely on deed and lien records and can execute and receive transfers and

conveyances in reliance on true abstracts of title and lawyers' correct opinions thereon. Were the stability furnished by these rules withdrawn and the fundamental contracts, on which the oil business so largely rests, be adjudged by the Supreme Court to create mere rights in personalty at some uncertain date in the future, the structure of the business would be seriously, if not fatally, jeopardized.''

That statement applies with equal force to the industry in Montana. For other cases reaching the same conclusion, see the note in 128 A. L. R. 851, and the main case commencing on page 843.

I think the district court was right in entering judgment for plaintiff and that the judgment should be affirmed.

Rehearing denied June 20, 1945.