G. W. CARROLL, Appellant,

v.

George FUNK and Lydia Funk, Appellees.

No. 14135.

United States Court of Appeals
Ninth Circuit.

May 9, 1955.

Hall, Alexander & Burton, H. C. Hall, Edward C. Alexander, Great Falls, Mont., for appellant.

James T. Harrison, Malta, Mont., Robert W. Hurly, Glasgow, Mont., for appellees.

Before HEALY and BONE, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge.

This is an appeal from a decree of the District Court for the District of Montana, Havre Division. This matter was tried before the Court without a jury.

The case involves an "Assignment of Royalty" executed by George and Lydia Funk, Appellees herein, to G. W. Carroll, which, on its face, conveyed a 1/32 royalty of all the oil and all of the gas produced and saved from their lands. The District Judge reformed, amended and corrected the Assignment to convey an undivided 1/32 interest in and to all of the minerals in, under and upon said lands.

The facts in this case, as clearly established by the evidence, are as follows:

The appellees here, plaintiffs below, are citizens and residents of the State of Montana. The Appellant here, defendant below, is a citizen of the State of Alabama. On the 25th day of November, 1952, George Funk and Lydia Funk, the plaintiffs below, were the owners and in possession of the following described real estate: S½ of Section 13, N½ of Section 24, Township 30 North, Range 46 East M.M., Roosevelt County, Montana, and on that date executed the assignment above mentioned. Prior to the execution of said assignment one Roland Walters, acting on behalf of appellant G. W. Carroll, called at the farm of the plaintiffs for the purpose of buying minerals. Mr. Funk was in the milkhouse and Mr. Walters opened the conversation in connection with buying the oil and gas rights. The testimony of Mr. Funk might well be set forth here, but it could serve no useful purpose other than to show the reliance Mr. Funk placed on Walters' honesty and representations. The trial court heard this testimony, and no doubt believed it. Without seeing and hearing him on the witness stand the reading of it is proof of its absolute truth. The evidence is convincing that Mr. Walters was shrewd and experienced in what he was trying to do. He first asked Mr. Funk if he had some oil rights to sell, and Mr. Funk advised him that he did not intend to sell any more. He offered him $100, this was refused. He raised it to $150 per acre, and Mr. Funk still advised him that he did not care to sell any more, that he wanted to keep what he had left for his family. It was understood between Funk and Walters that Funk had 240 mineral acres left. All this time Mr. Funk was continuing with his chores, running the milk through the separator.

Mr. Funk had sold a 1/8 the night before, which was 80 acres, and when Walters asked him again, "What will you take?", Funk asked Walters if 1/8 equalled 80 acres, would 1/16 equal 40 acres, and Walters told him it would. The evidence plainly shows that Funk was depending on Walters for the information on just what this 1/16 meant. Walters even figured it out for him on a strainer disk box on the table, and convinced him that at $300 per acre, 40 acres would equal $12,000.00.

When Mr. Funk finished his work, he went into the house to get the description of the lands, and told his wife, in the presence of Walters, that he had sold another 1/16 or 40 acres, at $300 per acre, and Walters advised him that the 200

acres he had left "if this turns out to be a productive field, can bring you $200,000 a year." Then Walters advised them to keep the deal secret, left and returned later with a Notary, produced two assignments instead of one, and when Funk noticed the royalty, Walters explained to him that it was too steep for his boss at that price, so another party bought a 1/32nd, and that made it 2/32nds instead of 1/16th. When Funk asked him if that figured the same as 1/16th, or 40 mineral acres, he said, "exactly the same". Then Mr. Funk and Mrs. Funk executed the assignment.

There can be no question here that the assignment did not embody the actual agreement of the parties, and the mistake of the Funks brought about by the fraud of Walters, instead of them assigning the 1/32 mineral acres, they were induced and misled into conveying their entire remaining interest in their property which immediately adjoined a discovered oil well, and instead of being $300 per acre as represented by Walters, was approximately ⅓ of the per acre price Funk received in a mineral conveyance the preceding night for $125 per mineral acre. These are, in part, the facts found by the lower court. It is plain that the plaintiffs were not familiar with the royalty provisions of the assignment and relied solely on the representations made by Walters, Carroll's agent, that they were conveying only a small portion of their remaining interest, rather than their entire remaining holdings.

After these facts were before the Court, at the close of the evidence on behalf of the plaintiff, the Court permitted Plaintiffs to amend their complaint in the following respects:

"I believe it would show on line 6, where it reads 'to the defendant,' we would like to move to insert '20 mineral acres, being 1/32nd of 12½ per cent landowners' royalty of oil and gas produced and saved from said lands'; then further in lines 9 and 10 strike out the words '1/32nd of 12½ per cent landowners',' so it

will read 'and it was the express intention of the parties that the plaintiff assign to defendant royalty of oil and gas produced and saved from said lands,' and remove the period and add 'to the equal of 20 mineral acres.' That would then make Paragraph 4 read, your Honor, 'that prior to the execution and delivery of said assignment of royalty, Exhibit "A" aforesaid, plaintiffs and defendant had agreed that the plaintiffs would sell to the defendant 20 mineral acres, being 1/32nd of 12½ per cent landowners' royalty of oil and gas produced and saved from said lands described above; and it was the express intention of the parties that the plaintiffs assign to defendant royalty of oil and gas produced and saved from said lands to the equal of 20 mineral acres.' And then in Paragraph 5, your Honor, on line 23, following the words 'under said lands,' insert 'being the equal of 20 mineral acres,' so said line would then read, 'per cent of the total royalty under said lands being the equal of 20 mineral acres, which is the interest agreed upon by the parties and intended by the plaintiffs to be conveyed' ".

It is contended by the defendant that the Court erred in permitting this amendment in that royalty and mineral being separate property interests in law, an amendment during the course of trial, over objection, so as to allege "20 mineral acres, being 1/32nd of 12½ per cent landowners royalty" is ambiguous and self contradictory, failing to present any plain statement of issues and compelling defendant to try his action in the dark, not knowing "which way the Court would jump".

It is ridiculous for the defendant to claim he was in the dark, and the contention has no support in the record, and was first made in the appellate court. He makes no contention that he was deprived of opportunity to present any evidence to his benefit, and there is nothing in support of that contention.

The duty of the Court is set forth in Federal Rules of Civil Procedure, Rule 15(b), 28 U.S.C.A., as follows:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

There was no question here as to the admissibility of the evidence. At the time it was given there was no objection offered, and when the plaintiffs were permitted to amend their complaint there was no request made for a continuance to enable the defendant to meet such evidence.

There is no contention by the appellant that he at any time objected to the evidence presented at the trial. It is clear that throughout the trial the parties understood exactly what the issues were.

■ The trial court is vested with sound discretion in granting or refusing, leave to amend, and under the conditions we find here there was no abuse of that discretion. It was a clear duty on the part of the trial court to grant whatever relief the plaintiffs were entitled to, if under the pleadings they are entitled to a remedy, and the evidence supports the remedy given. Young v. Garrett, 8 Cir., 1947, 159 F.2d 634; Coblentz v. Sparks, D.C.Ohio, 1941, 35 F. Supp. 605; Lyon v. Metropolitan Life Ins. Co., 7 Cir., 101 F.2d 658, 659; American Fork & Hoe Co. v. Stampit Corp., 6 Cir., 125 F.2d 472, 473, 474; Nester v. Western Union Telegraph Co., D.C., 25 F.Supp. 478, 481; Ring v. Spina, 2 Cir., 148 F.2d 647, 653, 160 A.L.R. 371.

■ The other question raised by the appellant in support of his objection to the amendment is that the assignment, as amended, is precluded by the Statute of Frauds, is without merit. "The Statute of Frauds, designed to prevent fraud and perjuries, will not be allowed to operate as a means of fraud either in permitting one guilty of fraud to shelter himself behind it or in allowing its use as a means of perpetrating fraud." 27 C.J. p. 302; 37 C.J.S., Frauds, Statute of, § 218; 49 Am.Jur. p. 85; Sathre v. Rolfe, 31 Mont. 85, 77 P. 431.

■ Here the execution of the assignment was induced by the fraudulent misrepresentation of Walters, the Appellant's agent. The assignment was completely executed. The statute does not preclude the trial court from reforming an instrument which by reason of mistake or fraud fails to set forth the correct contentions of the parties. The appellant has never been deprived of the opportunity to plead the statute as a defense, and it would have been of no assistance if he had pleaded it.

The Statutes of Montana provide:

"When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded."

Section 13–706, Revised Codes of Montana 1947.

"When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected,

a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

Section 17-901, Revised Codes of Montana 1947.

■ Here Walters, the Appellant's agent, was a young man with a college education, and was an experienced lease broker, dealing with gas and oil leases. Mr. Funk and wife, Appellees here, testified they transacted their ordinary business, sold their cattle, received the check for them, and signed Bills of Sale, without much consideration of what they were signing. Funk, a man with an eighth grade education, testified that he took Walters' word and let him run the whole business. This is the way he had done with others that he had done business with, and he stated that they were all honest.

Walters violated the confidence placed in him by Funk, who is now asking the Court to correct the erroneous part of the writing and make it read as agreed to by the parties. Certainly, Walters, Appellant's agent, knew of the fraud he was practicing on Appellees. The insertion in the assignment of the royalty provisions instead of the 1/32 mineral acres was a deliberate and part of a well-thought out plan by Walters to defraud Mr. and Mrs. Funk.

Mr. Walters, through his chicanery, gained from Mr. Funk some eight times what Funk thought he was conveying by means of this "Assignment of Royalty". It is apparent from the evidence that what Mr. Funk thought he was conveying was 1/32 of his interest in and to the minerals under and upon said lands, termed the landowners interest, customarily 12½ per cent.

There is no question but what it would be, and is, difficult for the average layman to distinguish between mineral interests and royalty interests. Courts have disagreed on their meanings, and it is felt that lawsuits for interpretations thereof will continue until the legal profession is able to discover a proper formula for conveyances of this type.

Mineral deeds are often erroneously called royalty deeds. This confuses the royalty proper with that which produces the royalty. For a discussion and clarification of these terms, reference is made to the following: Rist v. Toole County, 117 Mont. 426 at page 443, 159 P.2d 340, 162 A.L.R. 406; 4 A.L.R.2d 492. Law of Oil and Gas Leases and Royalties, 2nd Ed. Glassmire, p. 306. Summers Oil & Gas, Vol. 3, Par. 599, p. 480. Fry v. Smith, 205 Okl. 222, 236 P.2d 699.

Is it any wonder then, after Mr. Funk determined that he had been defrauded, that the appellant, Mr. Carroll, asked him how he "stumbled on to it?" No doubt Mr. Funk would not have "stumbled on to it" if someone more learned in the terms used had "not put him wise to it".

The findings, conclusions of law, and Judgment of the trial court that the assignment of a 1/32nd royalty interest did not correctly embody the agreement of the parties and that the appellees are entitled to have the assignment reformed, amended, and corrected to convey an undivided 1/32nd interest in and to all of the minerals in, under and upon said lands, is supported by clear and convincing evidence.

When a person has been wronged, the law provides a remedy. This is true in this case and the Court has rightfully relieved the appellees from the fraud practiced upon them.

Judgment affirmed.